## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **CRYSTAL G. MULLINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-CV-00036 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,**[1] | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

### I

Plaintiff Crystal G. Mullins filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Act (the "Act"), 42 U.S.C.A. §§ 1381-83f (West 2012 & Supp. 2013).  Jurisdiction of this court exists under 42 U.S.C.A. §1383(c)(3).

Mullins protectively filed for SSI on February 6, 2008, alleging that she became disabled on February 6, 2008.  The agency initially denied Mullins's claim on July 22, 2008, and again upon reconsideration on February 9, 2009. Mullins requested a hearing before an administrative law judge ("ALJ"), which took place on June 9, 2010.  Mullins was represented by legal counsel at the hearing and a vocational expert ("VE") testified.

On July 19, 2010, the ALJ found that Mullins had sufficient residual functional capacity ("RFC") to perform a range of light work and thus was not disabled under the act.  Mullins requested that the Social Security Administration's Appeals Council review the decision.  The Appeals Council denied review on April 27, 2012.  Mullins then filed a Complaint in this court seeking judicial review of the Commissioner's decision.

Mullins has prior filings and ALJ decisions resulting in two periods of disability.  The first period was from November 1997 through October 2002, when Mullins's SSI benefits and Disability Insurance benefits ("DIB") were ceased due to medical improvement.  The second period was from December 2003 through December 2007, when her SSI benefits were terminated due to excess resources.

II

Mullins claims disability due to arthritis, lupus, seizures, memory loss, migraines, bipolar disease and other mental impairments.  She added she had difficulty using her hands, standing and sitting for long periods, and difficulty remembering to do tasks.  (R. at 227.)  She is a high school graduate and previously held several short term positions, including cashier, factory worker, sandwich maker, and waitress. She was 34 on the date of the ALJ's decision.  The record indicates that Mullins has not engaged in substantial gainful activity since the alleged onset date of February 6, 2009.

Mullins claims that she became disabled due in part to pain and arthritis in her joints.  Mullins was involved in a motor vehicle accident in 1997 and continues to have problems in her hands, shoulder, and knee.  In 2007 Mullins had three appointments at Community Medical Care in Lebanon, Virginia.  Initially, she reported pain and soreness in her shoulder, right knee, left foot, and edema in her ankles, legs, and hands.  (R. at 306.)  She described her pain as a seven on a scale of ten at her second visit.  The assessment for her third visit shows no swelling or joint deformities in her hands, full range of motion in her shoulders with no tenderness or crepitations, and spasms in her right knee.  (R. at 323.)  On August 7, 2007, Brian Easton, M.D., evaluated Mullins at C-Health of Lebanon and assessed

generalized knee pain and shoulder pain.  (R. at 332.)  Mullins continued seeking

treatment for her joint pain at C-Health from 2007 until the date of her hearing.

During her visits to C-Health, Mullins primarily saw Sandra Altenbach, FNP.

On April 16, 2008, Mullins reported shoulder pain, limited range of motion of left

ankle, joint pain and stiffness in the back, arms, legs, shoulders, knees, and small

joints of hand.  (R. at 337.)  Altenbach assessed Mullins as having osteoarthritis in

her shoulder.  (R. at 338.)  On May 29, 2008, Mullins saw Altenbach again for pain

in her shoulder and right knee.  Altenbach assessed Mullins with osteoarthritis in

her shoulder and rheumatoid arthritis.  (R. at 340.)  During this visit, Altenbach

completed a medical evaluation form on behalf of Mullins for the Department of

Social Security.  (R. at 334-35.)  The evaluation stated that Mullins should not

work for sixty days and recommended that she apply for SSI benefits.  (R. at 334.)

Over the remainder of 2008, Mullins saw Altenbach two more times complaining

of joint pain and stiffness.  Altenbach again assessed Mullins with osteoarthritis in

her hand and shoulder and with rheumatoid arthritis.

In 2009, Mullins continued to seek regular medical attention for joint pain

and stiffness.   On February 24, 2009, Mullins saw Kevin S. Combs, D.O., for her

shoulder. She described her pain as a four on a scale of ten.  She had some

tenderness and a limited range of motion in her back.  (R. at 400.)  She denied any

weakness in her shoulder.  (R. at 400.)  In 2009 Mullins also saw Shelley R. Miller,

FNP, for a series of regular checkups, where she complained of joint stiffness and pain.  Miller assessed Mullins with rheumatoid arthritis and prescribed medicine for pain.  (R. at 399.)  There was little variation in findings over these visits with Miller.  (R. at 383-84, 388-89, 390-97.)  On May 5, 2009, Altenbach gave Mullins a referral to Michael Bible, M.D., a rheumatologist, but the record does not indicate that she ever saw him for assessment or treatment.  (R. at 399.)

Prior to seeing Dr. Combs for her shoulder, Thomas Phillips, M.D., conducted an RFC assessment based on her medical records.  Dr. Phillips found that Mullins could lift/carry twenty pounds occasionally and lift/carry ten pounds frequently.  He also recorded that she could sit, stand, or walk for six hours during an eight-hour workday, and that she had no limitations on her ability to push or pull.  (R. at 345.)  He found she had no postural, manipulative, or visual limitations and no communicative or environmental limitations.  (R. at 345-46.)  Dr. Phillips determined Mullins exhibited a full range of motion with negative straight leg raises.  (R. at 349.)  Dr. Phillips found no evidence of rheumatoid arthritis. (R. at 349.) He also found Mullins's statements only partially credible regarding her complaints of joint pain in her hands and fingers.  (R. at 349.)

On October 15, 2009, Mullins saw Dwight Bailey, M.D., who filled out a "Medical Assessment of Ability to do Work Related Activities" form.  (R. at 364.) Dr. Bailey found that Mullins could lift/carry ten to twelve pounds occasionally

and ten pounds frequently.  (R. at 364.)   Mullins could stand or walk for only three to four hours within an eight-hour workday and sit for no more than one hour without interruption.  (R. at 364.)   He found she could never climb or crawl, but that she could occasionally kneel, crouch, stoop, and balance.  He noted that her impairments affected her ability to reach, handle, feel, and push/pull, but not her ability to see, speak, and hear.  (R. at 365.)   Dr. Bailey assessed that she had occasional numbness and tingling in her extremities, which affected her handling and feeling, reaching, and ability to push/pull.  (R. at 365.)   He recorded that she had environmental restrictions for heights, moving machinery, and temperature extremes, but that she had no restrictions on being around chemicals, dust, noise, fumes, humidity, or vibrations.  (R. at 365.)   Mullins stated that she had only seen Dr. Bailey on one occasion.  (R. at 49.)

Mullins returned to see Altenbach on December 30, 2009, when she fell out of a chair causing her increased knee pain.  Altenbach noted no patellar instability or body deformity.  (R. at 383.)  In early 2010 Mullins sought care at Appalachian Orthopaedic Associates ("AOA").  She had last visited AOA in 2000, and since that last visit had had some expected degenerative damage in her right knee.  (R. at 370-71.)   She had suffered no new right knee trauma since her motor vehicle accident in 1997.   AOA's records indicate that she had some crepitation (cracking/popping sounds) and tenderness in her knee, but no swelling or increases

-6-

in pain.  (R. at 370-71.)  X rays showed that there was no acute abnormality or fracture, but did show post-traumatic arthritic condition in the knee.  (R. at 371.) In March 2010, Mullins followed-up with AOA and began using a knee brace to help with pain.  She was improving at this point, was not taking any anti-inflammatory medication, and refused any injections.  (R. at 368.)

In 2010 Mullins also continued to see Miller for her shoulder pain.  On January 11, 2010, Mullins rated her pain as a two or three on a scale of ten.  She continued to see Miller throughout 2010.  Her symptoms were largely the same, and she continued to complain of pain and stiffness in multiple joints.  She did have some fluctuations in medications and pain levels, reaching seven on a scale of ten in April 2010.  (R. at 412.)  She also increasingly complained of back pain.  (R. at 406.)  She continued to complain of pain and increased swelling in her right knee, but the record reveals no signs of edema during Miller's exams.  (R. at 376, 379-80, 405.)

In addition to pain in multiple joints, Mullins also had parallel complaints of seizures, migraines, and memory loss.  At the time of her hearing, Mullins testified that she had not had a seizure in a year and a half.  (R. at 51.)  In April of 2010 Mullins complained that her migraines were more frequent.  (R. at 373.)  When Dr. Phillips, the state agency physician, completed the RFC assessment, he noted the evidence only established a primary diagnosis of migraines and a secondary

diagnosis of complex partial seizures.  (R. at 344.)  In terms of memory loss, Mullins reports that she suffers from memory problems and that she has difficulty following spoken instructions due to poor memory.  (R. at 227, 247.)  As of January 23, 2007, however, her medical records indicate that her memory was intact.  (R. at 295.)   At her April 2008 visit to C-Health in Lebanon, Virginia, Mullins continued to complain of memory loss, but Altenbach did not include it in her assessment.  (R. at 337-38.)

Mullins also seeks disability benefits based on her mental impairments. Throughout her primary care visits at C-Health, she complained of anxiety and depression in varying degrees and in turn, has taken medication for both.  Mullins has a history of treatment for mental health.  The record reflects that Mullins received treatment at Life Recovery from March 2005 through January 2007.  (R. at 295-304.)  During that treatment, her diagnoses were of bipolar disorder with psychotic features and panic disorder.  (R. at 304.)  By the end of 2005, Life Recovery's assessment notes improvement that continues throughout her treatment. She consistently received, however, a diagnosis of bipolar disorder and panic disorder.  By the last date of treatment on January 23, 2007, both of these diagnoses were reported to be doing well.  (R. at 295.)  At this time, Mullins also reported serving as a scout troop leader and having good relations with her husband. *Id.*  Despite claiming bipolar disorder in this application for disability

benefits, the record does not mention bipolar disorder as a complaint or as a diagnosis on or after the start date of the claim for disability.

Mullins frequently complained of anxiety and depression to her primary care practioners. Altenbach assessed Mullins with anxiety and depression during Mullins's 2008 visits. (R. at 338, 340, 341, 403.) During her August 2008 visit, Mullins requested referral to a psychiatrist for her anxiety on the advice of her attorney. (R. at 341.) Throughout 2009, Miller assessed Mullins with anxiety and depression, but noted that Mullins reported no anxiety during her visits toward the end of 2009. (R. at 388-92.) Although Mullins requested referral to a psychiatrist on the advice of her attorney, Miller did not make the referral. (R. at 54.) During her hearing, Mullins stated that she attempted to see a psychiatrist for her depression but was unable to find one in the area willing to take new patients. (R. at 53.)

In addition to regular assessment of anxiety and depression from her primary care appointments, Howard Leizer, Ph.D., a psychologist, reviewed Mullins's records. His psychiatric review took place on February 9, 2009. He determined that Mullins's alleged mental impairments were not severe. (R. at 350.) Dr. Leizer assessed that Mullins had an anxiety disorder not otherwise specified. (R. at 355.) He found, however, only mild limitations in her daily living such as mild difficulty maintaining social functioning and mild difficulty in maintaining concentration,

persistence, or pace.   He also found that she had no repeated episodes of decompensation.  (R. at 360.)  Overall he found that Mullins's claims were only partially credible and that there was not sufficient evidence to support the presence of a severe mental impairment.  (R. at 362.)

In testifying before the ALJ, Mullins characterized her pain and mental impairments as imposing significant limitations on her daily activities.  In terms of her joint pain, she described swelling in her lower extremities and pain from the popping her knee.  (R. at 46-47.)   She also testified that she has shoulder pain that radiates throughout her back. (R. at 48.)  She described migraines that last all day.  (R. at 51.)  She said that when she feels as if there is too much stress she may have an anxiety seizure, but also that she had not had a seizure in a year and a half.  (*Id.*)  Mullins testified that she needed to lay down for three to four hours a day and that she is only able to sit for twenty or thirty minutes at a time.  (R. at 52.)  In terms of her anxiety and depression, she stated that she has crying spells at least three to four times a week.  Mullins also testified that her memory loss requires her to write down her children's medicine schedules and that she needs her husband to remind her to call her own doctors.  (R. at 56.)  At the conclusion of her testimony, she also described stiffness in her hands that caused her to drop things.  Mullins testified that this stiffness prevented her from typing, writing, or putting things together.  (R. at 56.)

In function reports, however, Mullins described being able to take care of her children by bathing them, getting them off to school, and helping them with their homework.  (R. at 243.)  She performed household chores like dusting and laundry.  (R. at 244.)  She prepared meals daily for her family.  (*Id*.)  Mullins also was able to drive to do the grocery shopping.  She can handle finances by paying bills and using a checkbook and savings account.  (R. at 245.) She described playing with her children and talking to her family on the phone daily.  (R. at 266.) She is also able to take care of her own personal needs.  (R. at 242.)

At the hearing, a VE opined that Mullins would be able perform a range of light employment.   Mullins could work as a furniture rental consultant, and approximately 3,000 positions of that kind exist in Virginia and 149,000 positions nationally.  The VE also stated that she could work as an unskilled cashier, and there are approximately 35,000 of these positions in Virginia and 1,100,000 positions nationally.  Mullins could also work as an unskilled sales attendant, and approximately 2,700 of these positions exist in Virginia and 94,000 of these positions exist nationally.   The VE further opined that if he considered only sedentary work, there are still positions an individual like Mullins can perform. For example, she could work as a compact assembler, and there are approximately 200 of these positions in Virginia and 9,000 nationally.  She could also work as a hand packer in an industry like the pharmaceutical industry.  In Virginia there are

about 550 of these positions and 26,000 nationally. Finally, the VE testified that there are positions in the hotel and restaurant industry that an individual like Mullins could hold. She could serve as an order clerk in food and beverage. There are approximately 450 of these positions in Virginia and 22,500 nationally. (R. at 62-65.) The VE stated that Mullins migraines might make her an unreliable employee making it more difficult to obtain work. He also noted that if she needs to lie down for three to four hours a day, she would not be capable of sustaining substantial gainful employment. (R. at 66.)

The ALJ found that Mullins suffered severe impairments of degenerative disc disease, osteoarthritis/degenerative joint disease, residuals of multiple limb fractures sustained in her 1997 motor vehicle accident, and a history of migraines/headaches. (R. at 18.) The ALJ found that examinations document some limitations regarding range of motion and tenderness. The ALJ also found no limitations of motion, muscle weakness or sensory deficits. (*Id*.) The ALJ noted that all of Mullins's fractures from her motor vehicle accident in 1997 have healed. Overall, the ALJ found that Mullins is able to ambulate effectively and use her upper extremities satisfactorily.

The ALJ also found that Mullins's alleged mental impairments are not severe and do not impose more than mild functional limitations. (R. at 19.) Mullins has not had a seizure in at least two years, and she is not taking any

medication for seizures.  The ALJ concluded that Mullins had the RFC to perform a range of light work with some limitations.  The ALJ specifically limited that work to:

> [S]he can lift/carry up to twenty pounds occasionally and ten pounds frequently; can stand and/or walk six hours in an eight hour day; can sit six hours in an eight hour day; should never use the lower extremities for operation of foot controls; should never reach overhead with the right upper extremity (she is right hand dominant); should never climb ladders/ropes/scaffolds or crawl; can occasionally climb ramps/stairs, kneel, crouch, and stoop/bend; should avoid exposure to hazards (machinery, heights, etc); and should avoid concentrated exposure to vibrations.

(R. at 20.)  Based on this RFC assessment and the VE's testimony, the ALJ held that between February 6, 2008, and July 19, 2010, Mullins was capable of performing jobs that existed in significant numbers in the national economy and therefore was not disabled as defined by the Act.

Mullins contests the ALJ's decision, arguing that it was not based on substantial evidence. Specifically, she argues that the ALJ failed to properly evaluate the treating source opinions, that the ALJ erred in not finding severe mental impairment, and that the ALJ failed to properly consider Mullins's allegations of disabling pain.  The Commissioner contends that the ALJ assigned proper weight to the medical opinions in contention, that the ALJ properly analyzed the record and addressed Mullins's complaints of mental impairments, and that the ALJ properly discounted Mullins's subjective complaints of pain

because they were not consistent with the record medical evidence and Mullins's own self-reports.

## III

The plaintiff bears the burden of proving that she was under a disability during the relevant time period. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability it strict. The plaintiff must show that her "physical or mental impairment or impairments [were] of such severity that [she was] not only unable to do [her] previous work but [could not], considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . . " 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or equaled the severity of a listed impairment; (4) could have returned to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2013). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an

-14-

assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Mullins first argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to accord the proper weight to the evaluations of Dr. Dwight Bailey and Nurse Practioner Altenbach. Dr. Bailey and Altenbach both opined that Mullins had more severe limitations than those found by the ALJ.

Mullins further asserts that these opinions are the only treating or examining opinions contained in the record.

The question of the weight to be accorded medical opinions is reserved to the Commissioner. *See* 20 C.F.R. § 416.920(b) (2013). In assessing medical opinions, the Commissioner evaluates several different factors including the examining relationship, the treatment relationship, supportability, and consistency. *See* 20 C.F.R. § 416.927 (2013). Where an opinion is not supported by the clinical evidence or is inconsistent with other substantial evidence, the opinion "should be accorded significantly less weight." *Craig,* 76 F.3d at 590.

The ALJ carefully reviewed the record and concluded that Dr. Bailey's opinion was inconsistent with Mullins's testimony and the medical evidence of the record. The ALJ did not follow Dr. Bailey's decision, in part, because he had only seen Mullins once. 20 C.F.R. § 416.927(c)(2). Despite Mullins's contention that Dr. Bailey's opinion is entitled to considerable weight as a treating physician, Dr. Bailey's one-time assessment does not "provide a detailed, longitudinal picture" of Mullins's impairments. 20 C.F.R § 416.927(c)(2). The ALJ also found that Dr. Bailey's opinion was inconsistent with substantial evidence in the record. Dr. Bailey found Mullins's impairments affected her ability to reach, handle, feel, and push/pull. Mullins argues that Dr. Bailey's assessment is substantiated by evidence in the record of her decreased grip strength and various complaints of

pain in her shoulder, back, and knee.  Her medical records, however, show that despite her complaints of pain, Mullins had normal bilateral strength.   She also scored a 4 and a 4.5 out of a possible 5 on grip strength tests. Mullins often complained of shoulder pain, but as recent as January 2010, only rated the pain as a two or three on a scale of ten.

Dr. Phillips's RFC assessment was based on Mullins's medical records.  His findings were contrary to those of Dr. Bailey and stated that Mullins did not have severe impairments with respect to her back, shoulder, and knee.  He also found that there was no evidence in the record to demonstrate Mullins had rheumatoid arthritis.  Additionally, Miller found that Mullins had normal bilateral strength and a normal gait despite her complains of weakness and pain.   Miller noted that Mullins was never in any acute distress.  Lastly, her orthopaedic doctor conducted an X ray and found that she had no acute abnormality or fractures.  The arthritic condition in her knee did not cause swelling or significant pain.   The doctor recommended over-the-counter anti-inflammatory medication and did not write her a prescription.  For these reasons, Dr. Bailey's opinions are not supported by the overall record.

Mullins contends that the ALJ is directed by SSR 06-3p to fully address the opinion of Nurse Altenbach as a Nurse Practitioner.  However, the Ruling states that the judge *should* evaluate the opinions of sources other than acceptable

medical sources to determine impairment severity and functional effects.  SSR 06-3p.  The ALJ determined that Nurse Altenbach was not an acceptable treating source under the Regulations.   The ALJ's treatment of Altenbach's opinion, however, was in line with the recommendation with *SSR 06-3p*.  Her opinions were considered "along with the other relevant evidence in the file," *SSR 06-3p*, and the ALJ determined that her assessments were not supported by the overall record. Although Mullins complains of pains in her joints, she is still able to do activities such as play ball. She also moves without any assistive device.  She claims difficulty holding even light objects like keys, but her grip tests do not reflect any difficulty in her upper extremities.  Altenbach also assessed Mullins with rheumatoid arthritis and a seizure disorder, but there is no evidence in the record to support that Mullins has rheumatoid arthritis.  Also, Mullins has not experienced a seizure in over two years, was not taking seizure medication, and had not seen a neurologist since March 2007.  For all of these reasons, the ALJ was justified in his decision not to treat Altenbach as an acceptable medical source and in his finding that the medical record does not support Nurse Altenbach's diagnoses.

Mullins also contends that the ALJ erred in not finding a severe mental impairment. She argues that she suffers from bi-polar disorder, anxiety and depression. There is no evidence of treatment or diagnosis of bi-polar disorder in the record beyond that noted in her medical history before the date of disability.

Also, Mullins's medically determinable mental impairments of anxiety and depression do not cause more than minimal limitation in her ability to perform basic mental work activities and are nonsevere.  In making this decision, the ALJ considered the four broad functional areas known as the "Paragraph B" criteria. These criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.

Mullins is able to perform activities of daily living.  She can do household chores, take care of her children, prepare meals, shop, drive, handle finances and manage her own personal needs.  Although Mullins argues that she has difficulty getting along with others, she is able to get along with her family, children, and perform social tasks such as shopping and interacting with examiners.  Mullins also says she has difficulty concentrating, but she is able to help her children with homework, handle household finances, drive, and follow written instructions. Lastly, she has experienced no episodes of decompensation.  The ALJ also noted all of these factors.  (R. at 19.)  Accordingly, the ALJ was justified in finding only a mild limitation in the first three functional areas of daily living, social functioning, and concentration, persistence or pace.   With no episodes of decompensation, these mental impairments were properly considered nonsevere. 20 C.F.R. 416.920a(d)(1) (2013).

The ALJ's conclusions after applying the Paragraph B criteria align with the conclusions of the Dr. Howard Leizer.  Despite Nurse Altenbach's continued assessment of anxiety and depression, Mullins did not participate in counseling or see a specialist.  In fact, the last time she received any psychiatric treatment was in January 2007.  There are also no significant symptoms located in any of the treatment records.  Furthermore, the ALJ noted that Mullins requested referral to a psychiatrist per the advice of her attorney, not because she or her treating physician felt her symptoms made that referral necessary.  Following that request, Mullins did not actually make an appointment to see the psychiatrist.  The evidence from the record shows that the ALJ correctly applied the criteria to the record and reached an appropriate conclusion that her mental impairments do not limit her ability to do basic work activities.

Lastly, Mullins argues that the ALJ failed to properly consider her allegations of disabling pain. When a claimant alleges disability because of pain, the ALJ applies a two-step process. *Craig*, 76 F.3d at 594. First, the ALJ determines whether the claimant suffers from a medically determinable impairment which would reasonably be expected to cause the pain alleged. *Id.* Next, the ALJ evaluates the intensity and persistence of the alleged pain and the extent to which it impacts the claimant's ability to work. *Id.* at 595.  In this second step, the ALJ

> must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's

> medical history, medical signs, and laboratory findings, . . . any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* at 595 (citations omitted). A claimant's own description of her impairment and symptoms, standing alone, is not enough to establish disability. 20 C.F.R. § 416.928(a) (2013). In addition to subjective complaints of pain, "there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §416.929(a) (2013). A claimant's treatment history is a relevant factor is assessing credibility. Since the ALJ is charged with observing a witness's demeanor, his findings on credibility must be accorded great weight and deference.

Here, the evidence in the record does not substantiate Mullins's claims of disabling pain. The ALJ noted that severe chronic pain often results in observable consequences such as weight loss, muscular atrophy, muscular spasms, the use of assistive devices, prolonged bed rest or adverse neurological signs. The ALJ observed none of these signs. In additions, the record fails to demonstrate any significant medical or neurological findings that would establish a pattern of truly sever pain that would prevent Mullins from working. Mullins also does not use physical therapy, biofeedback, a TENS unit, a dorsal stimulator, a morphine pump,

acupuncture, massage therapy, special creams, herbal remedies, chiropractic adjustments, or any other conventional remedies for relief from severe pain. Her orthopedist recommended only over-the-counter remedies for her pain rather than prescribing a more serious treatment.  When she was examined, she was not in any acute distress and was alert and oriented.

Contrary to Mullins's contentions otherwise, the ALJ did not make his determination solely on the basis of objective medical evidence.  During her hearing, the ALJ observed Mullins and asked her about her pain in relation to the findings reported in her medical records.  Based on his observations and the evidence in the record, the ALJ properly found there was no evidence in Mullins's medical records or otherwise to indicate that Mullins suffers from disabling pain.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence.  The plaintiff's motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the commissioner's final decision denying benefits for the relevant time period.

DATED:   August 29, 2013

/s/  James P. Jones
United States District Judge